**UNITED STATES of America**

v.

**William H. ANDERSON**

**No. CR. 02–10102–MLW.**

United States District Court,
D. Massachusetts.

March 10, 2003.

Michael A. Collora, Daniel M. Rabinovitz, Dwyer & Collora, LLP, Boston, MA, for William H. Anderson, Defendant.

Stephen G. Huggard, United States Attorney's Office, John Joseph Moakley Federal, Boston, MA, for U.S.

### MEMORANDUM AND ORDER

WOLF, District Judge.

The court has read the Government's Third Sentencing Memorandum and the Defendant's Third Sentencing Memorandum, each of which was filed in response to the February 26, 2003 Memorandum and Order.

The government has confirmed that the court was correct in understanding that defendant William Anderson was sworn before being interviewed on October 30, 2001. Therefore, the government acknowledges that it was incorrect when it argued previously that, "[w]hile [Anderson's false] statement was recorded in an affidavit, the affidavit memorializes what had just been stated in unsworn fashion." Gov.'s Second Sentencing Memorandum at 6. Anderson does not dispute that he was administered an oath before being interviewed on October 30, 2001. Therefore, the court will accept as true that

Anderson was sworn before being interviewed on that occasion and it will not be necessary for Department of Justice, Office of Inspector General Special Agents Frank J. Hopkins or Thomas M. Hopkins to be present to testify on this subject at the sentencing hearing.

The court will also accept as true the government's representation that Anderson was not sworn before the polygraph examination that he failed on December 12, 2001.

Although neither party objected to the Revised Presentence Report as inaccurate, in the February 26, 2003 Memorandum and Order, at page 2, the court questioned whether paragraph 14 of the Revised Presentence Report was correct in stating that, "investigative reports indicate that queries of employees [in August 2001] were not documented . . ." As anticipated by the court, the parties now confirm that an August 23, 2001 report of Federal Bureau of Investigation Supervisory Special Agent Richard DesLauriers states that Anderson was interviewed by DesLauriers on August 2, 2001 and represented that "he had no knowledge of any incoming call similar in nature to the one claimed to have been made by [Gary Lee Sampson]."[1] Anderson's Third Sentencing Memorandum asserts at pages 1–2 n. 1, that "asserts that he informed Mr. DesLauriers that he did not recall receiving a call from an individual who identified himself as Gary Lee Sampson—a position that Mr. Anderson has consistently maintained." It appears that there is a discrepancy between the accounts of Anderson and DesLauriers, and that while Anderson admits to knowingly making a

false statement on October 30, 2001, he claims, through counsel, not to have done so on or about August 2, 2001. Therefore, DesLauriers shall be present to testify, if necessary at the sentencing hearing. Anderson will also be afforded an opportunity to testify, but will not be required to do so. *See Mitchell v. United States,* 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999). However, if Anderson exercises his right to remain silent at sentencing the court may disregard his attorneys' representations concerning his position as they will not have been subject to cross-examination. *Id.* at 322, 119 S.Ct. 1307.

Anderson also asserts that, "[t]here has been no showing that Mr. Anderson's false affidavit might materially affect any case other than his own or that he was aware of the death penalty issue on October 30, 2001 when he denied receiving the phone call." *Id.* at 3. The information described in the February 26, 2003 Memorandum and Order, at pages 4–6, among other things, undermines these assertions. Therefore, Anderson will be afforded an opportunity to testify on these issues as well if he wishes to do so.

To date, this case involves a disturbing failure of the adversary system to present the court with information that is relevant to sentencing. For example, until questioned by the court during the plea colloquy, neither the government nor Anderson disclosed that he had been informed that he had failed a polygraph examination before he admitted to lying about whether he had received the telephone call from Sampson. *See* June 20, 2002 Transcript at 15, 20–21. Although Anderson's October 30, 2001 false statement was made under

---

1. The court is informed that the August 23, 2001 report had previously been provided to the Probation Department in a form that redacted, among other things, DesLauriers' name. The Probation Department did not provide it to the court until the government responded to the February 26, 2003 Order and furnished the Probation Department an unredacted version of the report.

oath, Anderson was not charged with perjury. The Probation Department apparently did not realize that Anderson's false statement was made under oath and, as a result, did not consider the relevant cross-references to the perjury Guidelines in calculating the range for Anderson's sentence in the original Presentence Report. *See* Oct. 23, 2002 Memorandum and Order at 8–11. In addition, as indicated earlier, the government later incorrectly represented that Anderson's oral statement on October 30, 2001 was not sworn. *See* Feb. 26, 2003 Memorandum and Order at 3; Gov. Third Sentencing Memorandum at 1; Def.'s *Third Sentencing Memorandum* at 3. Nevertheless, the court remains dedicated to finding the relevant facts accurately.[2]

The relevant facts include those relating to Anderson's health. The court understands that the Probation Department is obtaining the advice of the Bureau of Prisons concerning the implications of the February 14, 2003 letter of Dr. David Singer on behalf of Anderson for the question of whether Anderson should be incarcerated. The court expects that a further Addendum concerning this information will be filed soon.

As it appears that the sentencing hearing may involve testimony and, in any event, may be lengthy, it is hereby rescheduled for March 18, 2003, at 10:00 a.m. All of the issues raised by the Presentence Report and the court, beginning on June 20, 2002, may be addressed.

---

2. The parties assert that there is no plea bargain in this case and, therefore, no fact bargaining occurred. Nevertheless, this case has involved many of the problems relating to fact bargaining that Chief Judge William Young explored in *Berthoff v. United States,* 140 F.Supp.2d 50, 62, 64· n. 23 (D.Mass.2001). These problems include: the government omitting or glossing over material facts during the plea colloquy and in connection with sentencing, *id.* at 62; the potential for abuse of prosecutorial discretion by charging decisions that diminish the seriousness of the offense and may reduce the Guideline range for sentencing, *id.* at 64 n. 23; and the potential for virtually invisible, unwarranted disparities between similarly situated defendants because not all prosecutors would engage in such questionable conduct, *id.*